## UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
### Orlando Division

Case No. _____

ELIEZER TAVERAS, AND
VALERIA ROSA TAVERAS

     *Plaintiffs*

v.

BANK OF AMERICA, N.A.;
SERVICE ONE INC, DBA, BSI FINANCIAL SERVICES;
CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB IN ITS INDIVIDUAL
AND REPRESENTATIVE CAPACITY AS TRUSTEE OF
ARLP TRUST 4;

     *Defendants*

_____/


## COMPLAINT
## AND DEMAND FOR JURY TRIAL

COME NOW, VALERIA ROSA TAVERAS, and ELIEZER TAVERAS, husband and wife, (collectively "Plaintiffs"), *pro se*, and file this Complaint against Defendants: Bank Of America, N.A.; Servis One Inc, DBA BSI Financial Services; and Christiana Trust, a Division Of Wilmington Savings Fund Society, FSB, in its individual capacity and representative capacity as Trustee of ARLP Trust 4; and further stay:

### INTRODUCTION

1. The Plaintiffs bring this action under Article III, Section 2 of the United States Constitution, which provides, in relevant part, that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties Made, or which shall be made, under their Authority[.]", and under other

1

provisions of Florida and Federal law, and Tort law.

2. The acts, omission and/or misrepresentations of Defendants, in violation of security laws and Uniform Commercial Code laws, and others, as a consequence of the fabrication, use, and dissemination of a counterfeit promissory note, created a controversy between the parties resulting from actual and ongoing damages, including the annulment of a certain judgment entered by the Osceola County Court ("State Court"), creating a cloud on title to real property and other damages.

3. There is a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiffs and Defendants regarding whether Defendants have a duty to indemnify Plaintiffs for the harmful effects as a direct and proximate cause of Defendants' conduct.

4. This action is brought upon matter appearing right on the face of Osceola County Court's records, which demonstrates that Defendants disseminated the above-referred counterfeit promissory note, causing substantial damages to Plaintiffs.

5. Plaintiffs seek declaratory judgment, preliminary, and permanent injunction, and equitable relief to remedy business and personal injuries suffered as a direct and proximate cause of Defendants' unlawful acts and practices.

6. There is a substantial likelihood that Plaintiffs will succeed on the merits of the claims for the reliefs sought herein.

7. Any relief sought against Christiana Trust, a Division of Wilmington Savings Fund Society, FSB in its individual capacity, is sought pursuant to Fed. R. Civ. P. 17(a).

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over this action, pursuant to the following statutes:

   a) Under 28 U.S.C. § 1331, which gives federal district courts original jurisdiction over

civil actions arising under the constitution, laws or treaties of the United States;

b)  Pursuant to the doctrine of pendent jurisdiction and 28 U.S.C. § 1367, which gives the district courts supplemental jurisdiction over state law claims;

c)  Pursuant to Article III, Section 2 of the United States Constitution;

d)  Under 28 U.S.C. §§ 2201-2202;

e)  Under 28 U.S. Code § 1332, on the grounds that complete diversity of citizenship exists between all parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs;

9.  Venue is appropriate in this judicial district under 28 U.S. Code § 89(c) as the events that gave rise to this Complaint occurred in this District, and pursuant to U.S. Code § 1965.

## PLAINTIFFS

10.  Plaintiff, Eliezer Taveras, is a natural person, a citizen of the USA, and the State of Florida. He is sui juris.

11.  Plaintiff, Valeria Rosa Taveras a/k/a Valeria Taveras is a natural person, a citizen of the United States, a temporary resident of Madrid, Spain. Mrs. Taveras is sui juris.

## DEFENDANTS

12.  Defendant, Bank of America, N.A. is a diversified global financial service and a national banking association, a Delaware corporation headquartered in Charlotte, North Carolina.

13.  Defendant, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB is an asset management service company and offers trustee services; its main headquarters are located in Wilmington, DE, and is the trustee OF ARLP Trust 4.

14.  Defendant, Servis One Inc, dba BSI Financial Services is a mortgage servicer and a debt collector, with its main headquarters located in Irving, Texas.

3

15. All Defendants engage in substantial and not isolated activities within the State of Florida.

## DEFINITIONS

16. Defendant, Bank Of America N.A., will be referred to as "BANA".

17. Defendant, Christiana Trust, a Division Of Wilmington Savings Fund Society, FSB in its individual capacity will be referred to as the "Trustee"; and in its representative capacity as Trustee of f ARLP Trust 4 will be referred to as "The Trust"; and jointly will be referred to as "Christiana Trust".

18. As indicated above, the term "Plaintiffs" is used to refer collectively to Valeria Taveras and Eliezer Taveras, and will be used at all times for simplicity, independently of who might be the real party in interest in any particular cause of action.

19. Defendant, Servis One Inc., DBA BSI Financial Services will be referred to as "BSI".

20. The term "utter" "uttering" as used herein means attempting to pass in circulation a counterfeit document as genuine.

21. The term "security", as used herein is defined in 15 USC § 77b (2011);

22. The term "SEC", as used herein means the Securities and Exchange Commission established by section 78d of 15 U.S. Code CHAPTER 2B.

23. The term "UCC" means the Uniform Commercial Code.

## FACTS COMMON TO ALL CAUSES OF ACTION (COUNTS)

### BACKGROUND

24. On September 7th, 2006, the Plaintiffs bought the property located at 7706 Excitement Dr. Reunion, FL 34747 (the "Subject Property"); a copy of the warranty deed was recorded in Osceola County Book 3280, page 424.

25. Since 2012, the Subject Property is an **income property**.

26. The Subject Property was encumbered by a mortgage registered in Osceola County Public Records, Book 3282, Page 429 (hereinafter the "Mortgage"). The Mortgage references a purported promissory note ("Note") executed on September 7, 2006.

27. On August 28, 2014, Plaintiffs filed in the circuit court for Osceola County, Florida ("state court") a declaratory judgment complaint under case No. 2014CA002620 ("Declaratory Action"), seeking to declare the Mortgage null and unenforceable. Attorney Key Arago was representing Plaintiffs.

28. On January 29, 2015, the state court entered Final Default Declaratory Judgment ("Osceola Judgment"), declaring the Mortgage null, void, and canceled, and not act as a valid encumbrance on the Subject Property. Copy of the Osceola Judgment has been incorporated by reference and attached hereto as Exhibit "1".

### ACTS IN FURTHERANCE OF CONSPIRACY

29. On February 25, 2015, The Trust filed a notice of appeal in the state court for the Declaratory Action.

30. On an intent to "demonstrate" to the state court and Plaintiffs that The Trust was "the holder" in due course of the Note, on around June 22, 2015, an unknown individual(s) fabricated a false promissory note (the "B-Note"), and delivered it or caused to be delivered to BSI or The Trust. Copy of the B-Note can be found in the attached affidavit executed by Plaintiff, Valeria Taveras, incorporated by reference and attached hereto as Exhibit "2".

31. The B-Note bears:

   a) Forged initials of Valeria Taveras in each page;

    b) A forged signature of Valeria Taveras on page 6/6;

    c) An endorsement in blank, executed by Christina M. Schmitt, who purports to be Assistant Vice-President of BANA.

    d) A maturity of 30 years (from November 1st, 2006, up to October 01, 2036).

32. On information and belief, the B-Note was fabricated in BANA's corporate office by a BANA's employee(s), acting within the course and scope of his employment or contractual relationship with BANA, and then delivered or mailed to The Trust, in Delaware, or to BSI in Texas.

33. On June 25, 2015, The Trust filed a motion ("CT Motion") seeking to vacate the Osceola Judgment; a conformed copy of the CT Motion is been incorporated by reference and attached hereto as Exhibit "3".

34. The CT Motion attached an affidavit (hereinafter the "BSI Affidavit"), executed on June 22, 2015, by Manuel Villegas, who purports to be Default Operations Manager of BSI.

35. The BSI Affidavit attached a Copy of the B-Note. Copy of Manuel Villegas' affidavit can be found as part of the CT Motion. See Exhibit "3".

36. The CT Motion falsely asserts:

    a) That the B-Note (copy of which was attached to the CT Motion) is the Note, and thus, that Plaintiffs signed the B-Note [see ¶¶ 4-5];

    b) That copy of the Note was attached to the CT Motion [¶ 5];

    c) That The Trust "is the holder and holder of the Note and is entitled to enforce the Note" [¶ 10].

37. The BSI Affidavit falsely asserts:

    a) That Valeria Taveras executed the B-Note [See BSI Affidavit ¶¶ 6 and 13B];

b) That the Mortgage secures the B-Note [See BSI Affidavit ¶¶ 7-8 and 13B];

c) That The Trust is "the current holder of the Note and Mortgage and is the party entitled to enforce them" [¶ 9];

d) That The Trust "acquired the subject Note for value and without notice of forgery and/or any defense, defect or other infirmity thereto" [¶ 12].

38. Beginning in February 2016, BSI, acting as "loan servicer" for The Trust, attempted to collect money from Plaintiffs in the form of mortgage payments, through letters mailed in the United States mail. Copies of some BSI's statements have been incorporated by reference and attached hereto as Composite Exhibit "4".

39. On around March 2016, counsel Arago told Plaintiffs that The Trust "had shown evidence of being the holder of the Mortgage and the Note", so they could not prevail in appeal. Consequently, the attorney advised Plaintiffs to voluntarily dismiss the Declaratory Action to avoid the "fruitless" expenses in appeal.

a) The counsel's advice to Plaintiffs was based on The Trust's representation;

b) Attorney Arago's reliance on the CT Motion and the BSI Affidavit attached to it was justifiable; the B-Note looks genuine and is capable to mislead the average person;

40. Against their will, pursuant to the advice of counsel, Plaintiffs agreed to file a notice of voluntary dismissal of the declaratory judgment action ("Notice of Dismissal"). On March 10, 2016, counsel Arago filed the notice. See Exhibit "1".

a) Plaintiffs' reliance on Defendants' representation (through their counsel) was justifiable.

41. On around May 09, 2018, the Plaintiffs had actual knowledge of the existence of the false

promissory note (the B-Note), and only on around December 03, 2019, that copy it had

been attached to the BSI Affidavit/CT Motion. The discovery could not be done before,

even with reasonable due diligence.

## EFFECTS OF THE CONSPIRACY

42. Among other things, the effects of such concerted action as described above, have been:

a) Plaintiffs were prevented from a full and fair trial in their Declaratory Action;

b) The Declaratory Action was dismissed as a direct cause of Defendants' misrepresentations;

c) To date, the B-Note remains outstanding and constitutes a cloud on Mr. Taveras's title to the Property and an unlawful debt against Mrs. Taveras;

d) The Plaintiffs were harmed on their investment with substantial losses since 2014 up to this date;

e) The Plaintiffs were harmed by incurring enormous expenses, costs, and distress, and losses. The prejudicial effects are yet undetermined;

f) The BSI's statements, mailed after the Osceola Judgment had been reverted, made the Plaintiffs feel harassed, humiliated, and caused them distress and mental anguish.

## COUNT 1
## DECLARATORY JUDGMENT
## EQUITABLE, PRELIMINARY AND INJUNCTIVE RELIEF
## TO REMEDY FRAUD
## 28 U.S. CODE §§ 2201, 2202
## AGAINST CHRISTIANA TRUST

43. Plaintiffs bring this action against Christiana Trust, seeking declaratory judgment, equitable, preliminary, and injunctive relief, pursuant to 28 U.S.C. §§ 2201 (Creation of Remedy), and 2202 (Further Relief) to remedy fraud (Tort).

44. Plaintiffs have standing to bring this action.

45. An actual controversy that is ripe for judicial determination has arisen and now exists regarding whether The Trust, with the assistance of BSI, fraudulently induced Plaintiffs to file the Notice of Dismissal, and if the cloud on title of the Subject Property should them be removed.

46. The Trust's representation as set forth in Paragraphs 30 through 37 is false and misleading and made with the intent to defraud.

47. BSI's representation as set forth in Paragraph 37 is false and misleading and made with the intent to defraud.

48. The Trust and BSI's misrepresentations prevented Plaintiffs from a just and fair proceeding in their Declaratory Action.

49. The Trust and BSI were scienter of their misrepresentation or recklessly ignored to properly investigate its truthfulness.

50. Plaintiffs believed Defendants' misrepresentations and did, in fact, relied upon them, as set forth on Paragraphs 39 and 40.

51. Plaintiff's reliance on The Trust and BSI's misrepresentations was justifiable.

52. There was actual damage to the Plaintiffs as a direct and proximate cause of BSI and The Trust's conduct as set forth in Paragraph 42; the damages continue to increase.

53. Plaintiffs are likely to suffer irreparable injury in the absence of injunctive relief.

54. Declaratory relief is necessary and appropriate in this case because Defendants' fraudulent conduct has resulted in a cloud on title to Property and a cloud of uncertainty over Plaintiffs' business activities related to rental and/or sale of the Subject Property.

55. Plaintiffs do not have any other provision of law in order to protect their constitutional

rights.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and common law, Plaintiffs, Eliezer Taveras, and Valeria Taveras, in good faith, request the following:

i. A declaratory judgment declaring that Defendant, The Trust, committed fraud in the state court action;

ii. Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of injury during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary injunctions;

iii. Enter a permanent injunction, enjoining Christiana Trust, its directors, employees, heirs, agents, successors in interest, assignees, representatives, and those persons in active concert or participation with it are enjoined from (1) Collecting any amount, pursuing any legal action against Plaintiffs, their heirs, and transferees, in relation to the B-Note; (2) from selling, transferring, destroying, disposing of the referred promissory note;

iv. A declaratory judgment to reinstate as valid and fully enforceable the final judgment recorded on January 29, 2015, in Osceola County Public Records BK 4728, Pages 2021-2022;

v. Disgorgement of ill-gotten monies, to prevent and remedy fraud related to the B-Note;

vi. A jury verdict for compensatory or statutory damages, whichever is greater, in favor of Plaintiffs, and against the defendant, Christiana Trust, for damages caused by the Christiana Trust's fraudulent conduct; and

vii.    For such other and further relief that the Court deems just and proper.

**COUNT 2**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
**28 U.S. CODE §§ 2201, 2202**
**UCC § 3-401**
**AGAINST BANA AND CHRISTIANA TRUST**

56.    Plaintiffs bring this action against BANA, and Christiana Trust seeking declaratory, equitable and injunctive relief, pursuant to 28 U.S.C. §§ 2201 (Creation of Remedy), and 2202 (Further Relief).

57.    This is an implied Private Rights of Action pursuant to the UCC § 3-401.

58.    Florida adopted article 3 of the UCC.

59.    An actual controversy has arisen and now exists between Plaintiffs, BANA, and The Trust with respect to the liability of the B-Note. There is a need for a judicial determination whether Valeria Taveras must be declared "Not Liable" for the B-Note, pursuant to UCC § 3-401.

60.    Pursuant to UCC § 3-401, a person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3-402.

61.    In a related vein, section § 3-404(1) provides that: "Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it…" An "unauthorized signature" includes, inter alia, a forgery (UCC § 1-201[43]).

62.    Valeria Taveras did not sign the B-Note nor authorized any person to sign it on her behalf.

63.    Declaratory relief is necessary and appropriate in this case because the B-Note is false,

fabricated with the intent to defraud Plaintiffs and the Osceola court, and is now an illegal lien against the Subject Property, adverse to Plaintiffs; the B-Note illegally burdens or restricts usage or sale of the Subject Property, and is also an illegal debt against Valeria Taveras.

64.    The B-Note is a material misrepresentation of an instrument.

65.    The existence of the B-Note has caused substantial losses to Plaintiffs, as set forth in Paragraph 42, and has created an unavoidable ripening seed of controversy and an imminent irreparable injury in the immediate future to the Plaintiffs.

66.    Plaintiffs do not have any other provision of law in order to protect their constitutional rights.

WHEREFORE, Plaintiffs, Eliezer Taveras, and Valeria Rosa Taveras, pursuant to 28 U.S.C. §§ 2201 and 2202, UCC § 3-401 and the Court's own equitable powers request relief as follows:

i.    Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of Uniform Commercial Code Violations during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary injunctions;

ii.    A declaratory judgment and decree that neither Valeria Rosa Taveras nor Eliezer Taveras is liable for the B-Note and that the B-Note does not encumber the Subject Property;

iii.    Enter a permanent injunction to prevent future violation of the Uniform Commercial Code laws, enjoining BANA and Christiana Trust, and their respective directors, employees, heirs, agents, successors in interest, assignees, representatives, and those

persons in active concert or participation with them are enjoined from (1) Collecting any amount, pursuing any legal action against Plaintiffs, their heirs, and transferees, in relation to the B-Note; (2) from selling, transferring, destroying, disposing of the referred promissory note;

iv.    Disgorgement of ill-gotten monies, obtained through any type of business, related with the B-Note;

v.    An order that the Plaintiffs be awarded their cost for this cause of action and reasonable attorney's fees if any.

vi.    Issue other relief as this Court deems appropriate and just.

## COUNT 3
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
## 28 U.S. CODE §§ 2201, 2202
## UNIFORM COMMERCIAL CODE LAWS
## AGAINST BANA

67.    Plaintiffs bring this action against BANA, seeking declaratory, equitable and injunctive relief, pursuant to 28 U.S.C. §§ 2201 (Creation of Remedy), and 2202 (Further Relief).

68.    This is an implied Private Rights of Action pursuant to the Uniform Commercial Code laws.

69.    An actual controversy has arisen and now exists between Plaintiffs and BANA with respect to the liability of the B-Note. There is a need for a judicial determination whether BANA must be declared liable of the B-Note, pursuant to UCC § 3-401, 3-403, and 3-404.

70.    Neither Valeria Taveras nor Eliezer Taveras signed the B-Note nor authorized any person to sign it on their behalf, thus, they are not liable, pursuant to UCC § 3-401. Pursuant to sections § 3-403 and 3-404(1) of UCC, a person forging an instrument must be held liable of it.

71. The suspect criminal forging Valeria Taveras' signature and initials in the B-Note is unknown; however, BANA adopted, approved and/or ratified the wrongful conduct of the tortfeasor by endorsing the forged promissory note and delivering or causing to be delivered to BSI or The Trust.

72. BANA must be held liable for the act done by its employee(s), acting within the course and scope of his employment or contractual relationship with BANA.

73. Plaintiffs have been injured as a direct and proximate cause of the use of the B-Note as set forth in Paragraph 42.

74. Declaratory relief is necessary and appropriate in this case because Defendants' unlawful acts have resulted in a cloud on title to Property and a cloud of uncertainty over Plaintiffs' business activities related to rental and/or sale of the Subject Property, and risk of irreparable injury.

75. There is a bona fie need for a declaration that BANA is liable to pay for the instrument, pursuant to 28 U.S.C. §§ 2201 and 2202, and UCC laws.

76. Plaintiffs do not have any other provision of law in order to protect their constitutional rights.

WHEREFORE, Plaintiffs, Eliezer Taveras, and Valeria Rosa Taveras, pursuant to 28 U.S.C. §§ 2201 and 2202, and sections § 3-403 and § 3-404(1) of UCC, and the Court's own equitable powers request relief as follows:

  i. Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of Uniform Commercial Code laws violations during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary injunctions;

ii.   A declaratory judgment and decree that Bank of America, N.A. has engaged in unlawful conduct in violation of the Uniform Commercial Code law, UCC § 3-404;

iii.  A declaratory judgment and decree that neither Valeria Rosa Taveras nor Eliezer Taveras is liable for the B-Note and that the B-Note does not encumber the Subject Property;

iv.   A declaratory judgment that Bank of America, N.A., is fully liable for the B-Note.

v.    An order that the Plaintiffs be awarded their cost for this cause of action and reasonable attorney's fees if any.

vi.   A judgment against BANA and in favor of Plaintiffs for statutory (if any) or compensatory damages, whichever is greater, for damages caused to Plaintiffs by the dissemination of the B-Note;

vii.  Issue other relief as this Court deems appropriate and just.

**COUNT 4**
**FLORIDA STATUTES, CHAPTER 772**
**28 U.S. CODE §§ 2201, 2202, OR ON THE ALTERNATIVE FL CH 86**
**AGAINST ALL DEFENDANTS**

77.  Plaintiffs bring this action against all Defendants seeking declaratory, equitable and injunctive relief, pursuant to:

a)  Florida Statutes, Chapter 772 (The Florida Civil Remedies for Criminal Practices Act); and

b)  28 U.S.C. §§ 2201 (Creation of Remedy), 2202 (Further Relief), or on the alternative Chapter 86 of Florida Statutes.

78.  Pursuant to Chapter 86 of Florida Statute counties courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal

relations whether or not further relief is or could be claimed, similar provisions is given by the 28 U.S.C. §§ 2201 and 2202.

79. Section § 772.104 of Florida statutes provides that any person who proves by clear and convincing evidence that he or she **has been injured** by reason of any violation of the provisions of s. 772.103 "shall have a cause of action for threefold the actual damages sustained", including "reasonable attorney's fees and court costs in the trial and appellate courts".

80. Pursuant to § 772.103, subsections 1, 2 and 3, it is unlawful for any person, with criminal intent, to receive any proceeds derived, directly or indirectly, from a pattern of criminal activity, to "use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or **operation of any enterprise**." (Emphasis added), and "to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property", and it is also unlawful to be "Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity" and finally, in subsection (4), provides that it is unlawful "**To conspire or endeavor** to violate any of the provisions of subsection (1), subsection (2), or subsection (3)" (emphasis added).

81. The Act defines "criminal activity" as commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit any crime that is chargeable by indictment or information under the following provisions (between many others): Chapter 831, relating to forgery and counterfeiting; Chapter 837, relating to perjury; and

16

"Any conduct which is subject to indictment or information as a criminal offense and listed in 18 U.S.C. s. 1961(1) (A), (B), (C), or (D)[.]".

82. Defendants have engaged in "at least **two incidents of criminal activity** that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents", (emphasis added) defined in 772.102(4) as "pattern of criminal activity".

83. As part of their pattern of criminal activity, and in order to defraud or attempt to defraud the Plaintiffs, Defendants constituted an enterprise, as defined in Fla. Stat. § 772.102(3); The association-in-fact enterprise ("Enterprise"), which may substantially change its membership over time, has been constituted mainly by BANA, BSI, and The Trust. There are other unspecified persons or entity members of the Enterprise which might include, but not limited to: attorneys, public notaries, accountants, collectors, etc. The members of the Enterprise might change roles from time to time, but the overall Enterprise remains intact in general form and purpose, directed toward an economic goal: unlawful collect money from Plaintiffs, and/or take the Subject Property, and unjustly enrich themselves by the sale/assignment of the counterfeit promissory note.

84. The members of the Enterprise conducted the affairs of the Enterprise through a "pattern of criminal activity" as that term is defined in Fla. Stat. §§ 772.102 and 772.103. The pattern of criminal activity consisted of numerous incidents occurring within a period of fewer than five years, including: (1) Perjury, as defined in Chapter § 837 of Florida Statutes; (2) Forgery and counterfeiting, as defined in Chapter 831 of Florida Statutes, and (3) "conduct which is **subject to indictment <u>or</u> information** as a criminal offense and

listed in 18 U.S.C. s. 1961(1) (A), (B), (C), or (D)" (Florida Chapter 772.102[b]) ("emphasis added").

**The scheme**

85.    Defendants' representations as set forth in Paragraphs 30 through 38 are part of the scheme to defraud Plaintiffs. All these racketeering acts are related to each other.

86.    Each Defendant conspired and/or aided and abetted the other in their unlawful conduct.

87.    The scheme has caused several damages to Plaintiffs, as demonstrated in Paragraphs 39 through 42. Plaintiffs are also at risk of irreparable harm.

## I. Florida Chapter § 837

88.    Florida Chapter § 837.02(1) establishes that "whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree".

89.    As part of their pattern of criminal activity, and in order to defraud or attempt to defraud the Plaintiffs and the state court, the BSI's employee, acting within the course and scope of his employment or contractual relationship with BSI, willfully produced the BSI Affidavit, to be used in the State Court's proceeding, subscribing as true a material matter that he could not believe was true, in violation Section § 837.02 of Florida Statutes.

90.    BSI's affidavit, as set forth in paragraph 37, contains materially false statements, known to be false at the time were made.

91.    BSI was scienter of the falsity of the B-Note when the BSI Affidavit was produced and presented to the State Court.

92.    BSI must be held liable for the act done on its behalf by its employee(s) acting within the course and scope of his employment or contractual relationship with BSI.

93. The BSI Affidavit was created in furtherance of the Enterprise's scheme to defraud the Plaintiffs, as demonstrated in Paragraphs 30 through 40.

94. BSI's unlawful conduct, in violation of Chapter § 837, was a direct and proximate cause of Plaintiffs' harm, as set forth in Paragraph 42.

## II. Florida Chapter 831

95. Florida Chapter 831, as established in section 831.01 and section 831.07, makes it illegal to falsely make, alter, forge or counterfeit a promissory note with the intent to injure or defraud any person.

96. As part of Defendants' pattern of criminal activity, and in order to defraud or attempt to defraud the Plaintiffs, knowing that Plaintiffs had obtained the Osceola Judgment, BANA and others defendants planned an artifice to revert the judgment. BANA fabricated the false promissory note and delivered it or caused it to be delivered to BSI or The Trust, to defraud Plaintiffs as set forth in Paragraphs 30 through 40, and in violation of Chapter § 831 of Florida Status.

97. BANA's unlawful conduct, in violation of Chapter § 831, was a direct and proximate cause of Plaintiffs' harm, as set forth in Paragraph 42.

## III. 18 U.S.C. § 1961

### A. 18 U.S.C. § 1341

98. The Federal Mail Fraud Statute, 18 U.S.C. § 1341, provides that any use of the mails in conjunction with a scheme to defraud is a criminal act.

99. Pursuant to 18 U.S.C. § 1341 there are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing or attempting to execute, the scheme (or

specified fraudulent acts).

100. As set forth in Paragraph 38, in order to carry out or attempt to carry out the unlawful collection of debt, as part of the Enterprise's pattern of criminal activity, BSI started to mail its mortgage statement with the intent to collect money from Plaintiffs, in violation of 18 U.S.C. § 1341.

101. The collection was part of the scheme to defraud Plaintiffs, as set forth in Paragraphs 30 through 40.

102. BSI acted on behalf of The Trust, Principal. BSI aided and abetted The Trust in the unlawful conduct.

103. The Trust and BSI's unlawful conduct, in violation of 18 U.S.C. § 1341, was a direct and proximate cause of Plaintiffs' harm, as set forth in Paragraph 42(f).

**B.  Fraud in the Sale of Securities**

104. The B-Note indicates a maturity of 30 years; the B-Note is a **false security instrument**.

105. BANA and Christiana Trust are governed by Securities Laws.

**(1).    Section 78J(b) of the 15 U.S. Code Chapter 2B, (as of BANA and Christiana Trust)**

106. Pursuant to section 78J(b) of the 15 U.S. Code Chapter 2B, it is unlawful to use or employ, in connection with the **purchase** or **sale** of any security any manipulative or deceptive device or contrivance in contravention of SEC's rules and regulations.

107. As part of Defendants' pattern of criminal activity, and in order to defraud or attempt to defraud the Plaintiffs, knowing that the Plaintiffs had obtained the Osceola Judgment, the Defendants planned an artifice to revert the judgment:

a) In their attempt to represent that they had complied with UCC 9-203(b), BANA and The Trust made or executed a fictitious sale/purchase of the B-Note, as can be seen in Paragraphs 10 of the CT Motion, and Paragraph 12 of BSI Affidavit;

108. Both, The Trust and BANA, were scienter of the falsity of the B-Note, and intentionally participated in the scheme, in violation of the Securities Act of 1933, 78J(b) of the 15 U.S. Code, Chapter 2B.

109. Plaintiffs were the victims of the artifice, as set forth in Paragraphs 39 through 42.

110. There was actual damage as a direct and proximate cause of BANA and The Trust unlawful conduct, as set forth in Paragraph 42.

**(2)      Securities Exchange Act of 1934 (as of BANA and Christiana Trust)**

111. SEC's Rule 10b-5 deems it to be illegal for anybody to directly or indirectly use any measure to defraud, make false statements, omit relevant information, or otherwise conduct operations of business that would deceive another person in relation to conducting transactions involving stock and other securities.

112. Misrepresentations or deceptive omissions of material fact, in relation to conducting transactions involving securities, constitute deceptive acts or practices prohibited by SEC's Rule 10b-5.

113. Therefore, BANA and The Trust's representation as set forth in Paragraphs 30 through 39 is false and misleading and constitutes a deceptive act or practice in violation of SEC's Rule 10b-5.

114. Plaintiffs were the victims of the artifice, as set forth in Paragraphs 39 through 42.

115. There was actual damage as a direct and proximate cause of BANA and The Trust unlawful conduct, as set forth in Paragraph 42.

      **(3).**   **Dodd-Frank Act (as to Christiana Trust):**

116.  Plaintiffs are consumers, The Trust a "covered person", and a mortgage is a "consumer financial product", as those terms are defined in the Dodd-Frank Act.

117.  The Dodd-Frank Act, Title X, known as the Consumer Financial Protection Act of 2010, subtitle C, Sec 1036, establishes that it is unlawful for any covered person or Service Provider to "commit any act or omission in violation of a Federal consumer financial law" or to "engage in any unfair, deceptive, or abusive act or practice".

118.  **The Trust** employed a device, scheme, or artifice to defraud Plaintiffs. The Trust's conduct, as demonstrated in Paragraphs 30 through 39, is in violation of the Dodd-Frank Act, Title X, Sec 1036.

119.  Plaintiffs are direct victims of The Trust's artifice.

120.  There was actual damage as a direct and proximate cause of The Trust unlawful conduct, as set forth in Paragraph 42. Furthermore, the Mortgage has created an unavoidable ripening seed of controversy and an imminent irreparable injury in the immediate future to the Plaintiffs. The Mortgage affects the present interest of the Subject Property.

### CONCLUSION AS THIS CAUSE OF ACTION

121.  It has been a series of related predicate acts, a treat of fraudulent acts, which occurred over a substantial period of time (within five years period).

122.  The unlawful acts described herein were interrelated by distinguishing characteristics that were not isolated incidents; had the same victims: Plaintiffs; and had the same intents: Collect money and/or take the Subject Property.

123.  There is a reasonable likelihood that Defendants will commit a violation in the future. They are repeat offenders.

124.  Here, Plaintiffs have been the victims. As a result, and proximate cause of Defendants' unfair, deceptive, and abusive acts and practices, the Plaintiffs have been harmed by incurring substantial injury as set forth in Paragraph 42, and by incurring in other damages in a total amount as yet undetermined. The injury was not reasonably avoidable. In addition, Defendants have unjustly enriched as a result of their unlawful acts or practices.

125.  Defendants' unlawful conduct is continuing and unless equitable relief is granted the Plaintiffs' harm will continue to increase, and Defendants will continue to unjustly enrich themselves.

WHEREFORE, Plaintiffs, Eliezer Taveras, and Valeria Rosa Taveras, pursuant to the Civil Remedies for Criminal Practices Act and the Court's own equitable powers request relief as follows:

  i.  Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of violation of criminal laws as set forth in this cause of action  during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary injunctions;

  **ii.**  A judgment and decree that BANA has engaged in unlawful conduct in violation of Florida Statute § 831.01 and/or § 831.07.

  iii.  A judgment and decree that BSI has engaged in unlawful conduct in violation of Section § 837.02 of Florida Statutes;

  iv.  A judgment and decree that Christiana Trust is liable as principal for the violation of 18 U.S.C. § 1341;

  v.  A judgment and decree that BSI is liable as principal of violation of 18 U.S.C. §

1341;

vi.    A judgment and decree that BANA has engaged in unlawful conduct, in violation of Section 78J(b) of the 15 U.S.C. 2B;

vii.    A judgment and decree that BANA has engaged in unlawful conduct, in violation of SEC's Rule 10b-5;

viii.    A judgment and decree that Christiana Trust has engaged in unlawful conduct, in violation of SEC's Rule 10b-5;

ix.    A judgment and decree that Christiana Trust has engaged in unlawful conduct, in violation of Section 78J(b) of the 15 U.S.C. 2B;

x.    A judgment and decree that Christiana Trust has engaged in unlawful conduct, in violation of the Dodd-Frank Act, Title X, subtitle C, Sec 1036;

xi.    An order and decree that BANA, BSI, and Christiana Trust, have engaged in a pattern of criminal activity, as described in Florida Chapter § 772;

xii.    A permanent injunction and declaratory judgment enjoining Defendants, Christiana Trust, BANA and BSI, and their respective officers, employees, heirs, representatives, agents, servants, attorneys, successors in interest, assignees, and those persons in active concert or participation with them from directly or indirectly doing the specific acts in violation of Civil Remedies for Criminal Practices Act, as demonstrated at trial;

xiii.    Divestiture, Dissolution, and Reorganization order:

a.    Dissolving or terminating the illegal combination or association of BANA, BSI, and Christiana Trust;

24

xiv.   Rescission of contracts, restitution, refund of monies paid, and disgorgement of ill-gotten monies, obtained through the sale or transfer of the B-Note, to prevent and remedy any violation of any provision of law, pursuant to Chapter 772 of the Florida Statutes;

xv.   Award such relief as the Court finds necessary to redress injury to the Plaintiffs and Plaintiffs' business resulting from Defendants' violations of Civil Remedies for Criminal Practices Act, as demonstrated at trial;

xvi.   A severally judgment for treble the amount of this Court's verdict, costs, and interest as allowable by law on the benefit of the Plaintiffs, and against Defendants BANA, BSI, and Christiana Trust;

xvii.   An appointment of court officers to administer and supervise the affairs and operations of defendants' entities and to assist courts in monitoring compliance with courts' orders and in imposing sanctions for violations of Courts' orders;

xviii.   Issue other relief as the Court finds necessary to redress injury resulting from Defendants' violations of state and federal law as demonstrated at trial.

xix.   Award Plaintiffs the costs of bringing this cause of action, as well as such other and additional relief the Court deems appropriate and just.

## JURY DEMAND

Pursuant to Rule 38 of Federal Rule of Civil Procedure Plaintiffs hereby request a trial by jury on all issues triable by jury.

Respectfully submitted on June, 8th 2020,


Valeria Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
valtaveras@yahoo.com

Eliezer Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
Etaveras2020@gmail.com