## UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
### Orlando Division

Case No.  6:20-cv-00973-ORL-40-EJK

ELIEZER TAVERAS, AND
VALERIA ROSA TAVERAS

      *Plaintiffs*

v.

BANK OF AMERICA, N.A.;
SERVIS ONE, INC., DBA BSI FINANCIAL SERVICES;
CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB, NOT IN ITS
INDIVIDUAL CAPACITY, BUT AS TRUSTEE OF ARLP
TRUST 4;

      *Defendants*

_____/

## AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

      COME NOW, VALERIA ROSA TAVERAS, and ELIEZER TAVERAS, husband and wife (collectively "Plaintiffs"), *pro se*, and file this Second Amended Complaint against Defendants BANK OF AMERICA, N.A. ("BANA"); SERVIS ONE, INC., DBA BSI FINANCIAL SERVICES ("BSI"); and CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 4 (the "Trust") and further stay:

## PRELIMINARY STATEMENT

1.    The facts giving rise to this action begin in on 06/22/2015 and run up to around 04/20/2018.

2.    The Plaintiffs had actual knowledge of the **main facts** on around December 03, 2019. The discovery could not be done before, even with reasonable due diligence.

3. On 06/08/2020, the Plaintiffs timely filed suit in this court. No responsive answer has been filed. This is a relation back amendment, pursuant to Rule 15(c) of Fed.R.Civ.P.

4. The racketeering acts set forth herein were carried out over nearly a three-year period, were related and similar, were committed as part of Defendants' ongoing scheme to defraud the Plaintiffs, causing them substantial injury that was not reasonably avoidable or outweighed by any countervailing benefit.

5. To carry out this elaborate scheme, Defendants created and conducted a continuing pattern and practice of activity through an association-in-fact enterprise (the "BCB Enterprise"), which may substantially change its membership over time, consisting of, among others, the following: BANA, BSI, and The Trust.

6. There are other unspecified persons or entity members of the BCB Enterprise which might include, but are not limited to: attorneys, public notaries, accountants, collectors, etc.

7. The members of the BCB Enterprise might change roles from time to time, but the overall BCB Enterprise remains intact in general form and purpose, directed toward an economic goal: the acquisition of title to, right, or interest in real property.

8. The Circuit Court for Osceola County (the "State Court"), in the declaratory action, Case No. 2014CA002620 ("Declaratory Action"), had entered a Final Default Declaratory Judgment ("Declaratory Judgment"), declaring a certain mortgage, recorded in the Official Records of Osceola County, Florida, Book 3282, Page 429 (the "Mortgage"), "null, void, and canceled, and not act as a valid encumbrance" on the real property located at 7706 Excitement Dr., Kissimmee, FL 34747 (the "Property").

9. In order to revert the Declaratory Judgment to acquire title to or interest in the Property, and to collect or try to collect money from the Plaintiffs, the Defendants developed and

implemented their scheme in two distinct but related phases:

10. In the first phase, the Trust would seek **the reversal** of the Declaratory Judgment in the Florida Fifth District Court of Appeal ("5DCA") and then would seek the dismissal of the Declaratory Action.

11. In furtherance of the scheme, the Defendants fabricated a false promissory note, misrepresenting the compliance with Chapter 673 of Florida Statute; further, produced a perjured affidavit to be used in the State Court's proceeding, misrepresenting the Trust legal rights to enforce the Mortgage.

12. In connection with the scheme to defraud, even before succeeding in the first part of the plan, the Defendant(s) collected or tried to collect over $400,000.00 from Plaintiffs, using the mail, and finally uttered the false promissory note to a financial institution, accordingly an assignment of mortgage **and note**, containing false and misleading information, was recorded in the Official Records of Osceola County, Florida ("Public Records").

13. The Defendants' scheme succeeded; as a direct consequence of the Defendants' action the Declaratory Judgment was reversed and the Declaratory Action dismissed.

14. From its inception, the Plaintiffs **were the targets of and ultimate victims** of the racketeering acts of the RICO/Criminal enterprise, resulting, as direct and proximate cause of Defendants' actions, in substantial harm to the Plaintiffs.

15. The Plaintiffs are not sure about their rights to seek the re-establishment of the Declaratory Judgment or other rights, however, numerous questions of law and fact exist that require answers by the Court, which will substantially advance the adjudication and resolution of this case. These questions include whether the Defendants, individually or jointly, violated, endeavor, or conspired to violate the provisions of following federal and Florida statutes,

as asserted in Plaintiffs' causes of action:

**FEDERAL AND FLORIDA LAW PROVISIONS
RELATED TO THIS ACTION**

16.   That under F.S.[1] § 831.07, forging a promissory note is a felony of the third degree.

17.   That under F.S. § 837.02, a person commits a felony of third degree if he "makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter".

18.   That under F.S. § 831.02 whoever utters and publishes as true a false, forged, or counterfeited promissory note, shall be guilty of felony of the third degree.

19.   That under F.S. § 817.535, whoever file or direct another person to file in official record an "instrument", including assignment of mortgage or note "or any other document that relates to or attempts to restrict the ownership, transfer, or encumbrance of or claim against real or personal property, or any interest in real or personal property… containing materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree".

20.   That the use of the mails in conjunction with a scheme to defraud is a criminal act in violation of the Federal Mail Fraud Statute, 18 U.S.C. 1341, punishable up to 20 years in prison.

21.   That pursuant to 18 U.S. Code § 1344, it is unlawful, punishable for up to $1,000,000 or imprisonment for up to 30 years, or both, to knowingly execute, or attempt to execute, a scheme or artifice to defraud a financial institution.

---

[1] "F.S." means Florida Statute.

22. That section 772.103 (1) provides that it is unlawful for any person who has with criminal intent received any proceeds derived, directly or indirectly, from a **pattern of criminal activity** (which means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment or information under Chapter 517, Chapter 817, Chapter 831, between others; and any conduct which is subject to indictment or information as a criminal offense and listed in 18 U.S.C. § 1961), "**to use or invest**, whether directly or indirectly, any part of such proceeds, **in the acquisition of any title to, or any right, interest, or equity in, real property**" (emphasis added).

23. That under section 1962(c) of the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), "it shall be unlawful for any person employed by . . . any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .", including violating, or conspiring to violate 18 U.S. Code 1341 (relating to mail fraud), section 18 U.S. Code 1344 (relating to financial institution fraud).

## NATURE OF RELIEF SOUGHT

24. The Plaintiffs bring this action for damages against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c) and (d), and 1964(c); the Florida Civil Remedies for Criminal Practice Act, Fla. Stat. 772.104; and Florida State common law.

25. The Plaintiffs seek:

  i. Actual damages;

ii. Threefold the actual damages sustained as a result of the Defendants' scheme and artifices to defraud, in violation of Federal RICO;

iii. Threefold the actual damages sustained as a result of the Defendants' scheme and artifices to defraud, in violation of Chapter 772, of Florida Statutes;

iv. Declaratory judgment

v. Permanent injunction;

vi. Temporary injunction.

### THE PARTIES

### PLAINTIFFS

26. Plaintiff, Eliezer Taveras, is a natural person, a citizen of the USA, and the State of Florida. He is sui juris.

27. Plaintiff, Valeria Rosa Taveras a/k/a Valeria Taveras is a natural person, temporary resident at Madrid, Spain, and a citizen of the United States, and the State of Florida. She is sui juris.

### DEFENDANTS

28. Defendant, Bank of America, N.A. is a diversified global financial service and a national banking association, a Delaware corporation headquartered in Charlotte, North Carolina.

29. Defendant, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Not in Its Individual Capacity, But as Trustee of ARLP Trust 4, **is a trust**, which **trustee** is Christiana Trust, A Division of Wilmington Savings Fund Society, FSB (the "Trustee"), a federal savings bank with its principal place of business in **Delaware**.

30. Defendant, Servis One Inc., DBA BSI Financial Services, is a mortgage servicer and a debt collector, with its main headquarters located in Irving, Texas. BSI's servicing

obligations and activities include those performed pursuant to a sub-servicing contract.

31.   All Defendants engage in substantial and not isolated activities within the State of Florida.

## JURISDICTION AND VENUE

32.   The jurisdiction of the Court arises under 18 U.S.C. § 1961, et seq.; 28. U.S.C. § 1331; and principles of pending jurisdiction.

33.   This Court has original jurisdiction over this action under 28 U.S. Code § 1332, on the grounds that complete diversity of citizenship exists between all parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

34.   Venue is appropriate in this judicial district under 28 U.S. Code § 89(c) as the events that gave rise to this Complaint occurred in this District, pursuant to 18 U.S.C. § 1965(b),  and 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL CAUSES OF ACTION (COUNTS)
### BACKGROUND

35.   On September 7th, 2006, the Plaintiffs bought the Property.[2] On 05/22/2019, the Plaintiffs quitclaimed deed the title to the Property, with all interest, equity, and claim, to Plaintiff, Eliezer Taveras.

36.   Since 2008 the Property is an income property.

37.   On August 28, 2014, the Plaintiffs filed the Declaratory Action.

38.   On January 29, 2015, the State Court entered the Declaratory Judgment.

39.   Copy of the Declaratory Judgment has been incorporated by reference and attached hereto as Exhibit "1".

## THE SCHEME TO DEFRAUD
### Trial and appellate Court Proceedings in the Declaratory Action

---

[2] A copy of the warranty deed was recorded in Osceola County Book 3280, page 424.

40.  On February 25, 2015, and to create, execute and manage the first phase of the Defendants' scheme, the Trust appealed the Declaratory Judgment in the 5DCA.

41.  In furtherance of the Defendants' scheme, on 06/25/2015, the Trust filed in the State Court a motion to vacate the Declaratory Judgment (the "CT-Motion"), misrepresenting the Trust's legal rights to enforce the Mortgage, as stated below.

42.  A conformed copy of the CT-Motion and its attachments has been incorporated by reference and attached hereto as Exhibit "2".

43.  On information and belief, at all times mentioned herein, Defendant, BANA, was working in cooperation with the Trust and BSI.

44.  In furtherance of the Defendants' scheme, and in purported compliance with Chapter 673 of Florida Statutes, on information and belief, on around June 22, 2015, a BANA's employee, acting within the course and scope of his employment or contractual relationship with BANA manufactured a false promissory note (the "B-Note").

45.  The B-Note is a forged, false **security instrument**.

46.  The B-Note contains the following false or misleading statements and representations:

47.  In purported compliance with UCC 673.4011(a), to represent that the Plaintiff, Valeria Taveras, was liable for the false instrument, on information and belief, a BANA's employee, acting within the course and scope of his employment or contractual relationship with BANA, forged the signature of Ms. Taveras in the B-Note;

48.  In purported compliance with UCC 674.2101, to represent a "security interest", the B-Note states the address of the Property as the "[Property Address]";

49.  In purported compliance with UCC 673.1041(1), to represent that the B-Note was, in fact, a "negotiable instrument", the document states: First, a total amount to be paid of

$960,000.00; second, that the amount "Principal", plus interest, to be paid to "BANK OF AMERICA, N.A."; third, payments to be made from "FIRST day of NOVEMBER, 2006" up to "OCTOBER 01, 2036";

50. In purported compliance with UCC 673.2031, and UCC 673.3021, to represent that a possible future holder of the B-Note would be the legal "holder in due course", with rights to enforce it, the document states "I understand that the Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder"";

51. In purported compliance with UCC 673.2011, intending to represent that there was a "negotiation" through a "transfer of possession", Christiana Schmitt, who purports to be Vice president of BANA, indorsed the B-Note.

52. To ensure that the Defendants would obtain money either collecting money from the Plaintiffs, or selling/transferring the B-Note to another victim or money-hungry entity, in purported compliance with UCC 673.2051, Christiana Schmitt's indorsement was not a special indorsement to the Trust, but a "blank indorsement" as that term is defined by UCC 673.2051(2)[3];

53. After manufacturing the forged promissory note, BANA delivered or caused to be delivered the B-Note to BSI or to the Trust.

54. On information and belief, at all times mentioned herein, Defendant, BSI, was a collector (as that term is defined/used in the Fair Debt Collection Practices Act), and a "loan servicer", working in concert with the Trust, in its attempt to reverse the Declaratory

---

[3] UCC.2051(2) stays "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."

Judgment to acquire title to or interest in the Property, and to collect money from Plaintiffs.

55. On around June 22, 2015, Manuel Villegas, acting within the course and scope of his employment or contractual relationship with BSI, signed a sworn affidavit ("Affidavit") to be incorporated into the CT-Motion.

56. In purported compliance with UCC 673.4011, to represent that the Plaintiffs were liable for the B-Note, the Affidavit falsely asserts that the Plaintiffs signed the document [*see* Exhibit "2", Affidavit, ¶¶ 6&13(B)].

57. In purported compliance with UCC 673.3011, intending to represent that the Trust was entitled to enforce the B-Note, the Affidavit falsely asserts that the Trust "is the holder of the Note and Mortgage and is the party **entitled to enforce them**[.]" (emphasis added) [*id*. ¶ 9].

58. In purported compliance with UCC 673.2031 and UCC 673.3021(b)(1)&(4), intending to represent that the Trust was the "holder in due course", the Affidavit asserts "The Trust **acquired the subject Note for value** and **without notice of forgery and/or any defense, defect or other infirmity thereto**[.]" (emphasis added) [*id*. ¶ 12].

59. A copy of the B-Note and the Mortgage were attached to the Affidavit.

60. The copy of the Affidavit, which is found attached to the CT-Motion, is incorporated by reference hereto (*See* Exhibit "2").

61. In furtherance of the Defendants' scheme, and in purported compliance with UCC 673.1041, and UCC 673.2031, the CT-Motion falsely asserts that the Mortgage secures the B-Note [*See* Exhibit "2", CT-Motion, ¶ 3]; that the Plaintiffs signed the B-Note [*id*, ¶ 4]; that the Trust "is entitled to enforce" the B-Note [*id*. ¶ 10].

62. Further, the Trust misrepresented its rights to interest in the Property [*id*, ¶¶ 1-10].

63. In addition to the above-described acts, on August 7, 2015, the Trust filed the Brief in the 5DCA. A copy of the Brief is been incorporated by reference and attached hereto as Exhibit "3".

64. In purported compliance with several provisions of the Florida Uniform Commercial Code, including, but not limited to UCC 673.2031, UCC 674.2101, the Trust states in the Brief "Christiana Trust's **security interest** in the property remained unchanged, and it did not lose its rights to all **future payments under the Note and Mortgage**" (Emphasis added); [*See* Exhibit "3", page 16].

**The collection scheme**

65. On around 01/18/2016, BSI, on behalf of the Trust, started using the U.S. mail to complete the first phase of the Defendants' scheme, collecting, or trying to collect over $400,000.00 from the Plaintiff.

66. Although the State Court had declared the Mortgage "null, void and canceled, and does from the date of this judgment not act as a valid encumbrance on the Real Property described above [4]", BSI started the collection efforts, before any order from the 5DCA.

67. The following mortgage statements ("Statements"), were mailed by BSI:[5]

    a. Mailed on around 1/18/2016;

    b. Mailed on around 2/18/2016;

    c. Mailed on around 3/18/2016;

    d. Mailed on around 4/18/2016.

68. A truthful copy of some of the above-referenced Statements is been incorporated by

---

[4] The Property.
[5] During discovery, Plaintiffs might be able to find others.

reference and attached hereto as part of Composite Exhibit "4".

## THE REVERSAL/DISMISSAL

69. On 02/19/2016, the Court of Appeal reversed the Declaratory Judgment.

70. Notably, during the pendency of the Declaratory Action, the Plaintiffs were represented by counsel Keith Arago. Due to the circumstances, all the documentation in the appeal and the Declaratory Action was handled by the attorney. Relying upon the Defendants' representations, the attorney told the Plaintiffs that they would not succeed at trial.

71. The Statements mailed, even before that any condition of the Declaratory Judgment had been changed, and the above-referenced Defendants' misrepresentations were an important factor inducing Plaintiffs to believe that it would be a waste of time and money to continue pursuing their Declaratory Action.

72. Accordingly, against their will, and as a direct consequence of Defendants' representations, on 3/10/2016, the Plaintiffs filed a notice of voluntary dismissal of the Declaratory Action ("Notice of Dismissal").

73. As a consequence of the Defendants' misrepresentations, the Declaratory Judgement was reversed, the Plaintiffs were prevented from a fair trial, and the Trust acquired an interest in the Property.

### Uttering the forged note

74. On around 07/24/2017, the second phase of the scheme took place: the Trust uttered the B-Note to US Bank.

75. Accordingly, on 7/24/2017, an assignment of mortgage and note (the "CT-AMO"), was recorded in the Public Records of Osceola County, FL, Book 5183, and page 179.

76. On 04/20/2018, a corrective of assignment of mortgage and note (the "CT-Corrective")

was recorded in Public Records of Osceola County, FL, Book 5320, pages 1059-1060.

77. Copies of the CT-AMO and CT-Corrective have been incorporated by reference and attached hereto as Composite Exhibit "5".

78. In purported compliance with UCC 673.2011, 673.2031, and 673.3021, the CT-Corrective asserts "**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged" the Trust "does hereby **grant, assign and transfer**" to US Bank, "all beneficial interest under that certain mortgage, together with the certain note(s) described therein" (emphasis added);

79. In purported compliance with UCC 673.3011, and 674.2101 asserts "**all beneficial interest**… with **all interest, all liens**, **and any rights** due or to become due thereon" (emphasis added);

80. Furthermore, the CT-Corrective falsely asserts that the note been transferred to US Bank was described in the Mortgage.

## CAUSES OF ACTION
### COUNT I
### RICO 18 U.S.C. § 1964(c)
### ELIEZER TAVERAS AGAINST ALL DEFENDANTS

81. The Plaintiff, Eliezer Taveras, brings this action against all Defendants, pursuant to federal RICO 18 U.S.C. § 1964(c).

82. Eliezer Taveras' investment business if been a direct victim of Defendants' scheme. Eliezer Taveras has standing to bring this action.

### THE RICO ENTERPRISE

83. The BCB Enterprise (consisting of BANA, BSI, and the Trust) is an enterprise within the meaning of 18 U.S.C. 1961(4). As a whole, Defendants acted jointly, with very well-defined ongoing roles in the organization.

84.  At all times relevant herein, the BCB Enterprise was an "enterprise", as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c), engaged in, or the activities of which affect, interstate commerce.

85.  Defendant, the Trust, at all relevant times, was the principal of, exerted control over and directed the operations of the BCB Enterprise and each of its component parts. The Trust utilized that control using the Defendants' artifice to get the reversal of the Declaratory Judgment, the dismissal of the Declaratory Action, to acquire title to or interest in the Property, and collect or attempt to collect money from Plaintiffs, and finally, to utter the counterfeit document to US Bank.

86.  Defendants BANA and BSI were employed by or associated with the BCB Enterprise and its component parts and participated in the conduct of its affairs through a pattern of racketeering activity.

### THE PATTERN OF RACKETEERING ACTIVITY

87.  Defendants engaged in a nearly three-year period of criminal activity, acting singly and in concert with each other.

88.  The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that Defendants, co-conspirators, and the BCB Enterprise's participants agreed to the objective of an 18 U.S.C. § 1962(c) violation.

89.  During the period in which the individual Defendants operated the BCB Enterprise, as part of the pattern of racketeering activity, to execute the above-described scheme to defraud Plaintiffs, Defendants, overall, (a) fabricated the counterfeit promissory note, misrepresenting the compliance of UCC 673 and 674; (b) produced an affidavit, containing

false statements and representations in regards to material matter that Mr. Villegas could not believe to be true to be used in an official proceeding; (c) in connection with the above scheme to defraud, engaged in a continuous series of predicated acts of mail fraud, collecting or trying to collect money through the U.S. mail; (d) and finally defrauded a financial institution, leaving a cloud on title to Eliezer Taveras' real property.

90. By virtue of those activities, Defendants engaged in a continuous series of predicate acts, in **multiple** violations of 18 U.S. Code § 1341, and in violation of 18 U.S. Code § 1344.

91. Although Plaintiffs have not yet identified the exact amount of money made by Defendants with their artifice, the B-Note indicates a total amount to be paid of $960,000.00. On information and believe a good portion of that amount was received by the BCB Enterprise for the sale/transfer of the B-Note.

## DAMAGES SUSTAINED BY THE PLAINTIFF

92. As a direct and proximate cause of Defendants' overt acts and predicate acts in furtherance of violation of 18 U.S.C. § 1962(c), Plaintiff, Eliezer Taveras, has been injured in his business and property; the Plaintiff has been damaged in the aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

93. Under 18 U.S.C. § 1964(c), Plaintiff, Eliezer Taveras, is entitled to recover from Defendants jointly and severally, three-fold damages sustained by him, together with the costs of this lawsuit and reasonable attorneys' fees.

## COUNT II
### RICO 18 U.S.C. § 1962(c)
### ELIEZER TAVERAS AGAINST BSI

94. The Plaintiff, Eliezer Taveras, brings this action against BSI, pursuant to federal RICO 18 U.S.C. § 1964(c).

95.   Eliezer Taveras' business and property is been a direct victim of Defendants' scheme. Eliezer Taveras has standing to bring this action.

## THE RICO ENTERPRISE

96.   At all times relevant herein, BSI was a "person" within the meaning of 18 U.S.C. § 1961(3), and an "enterprise", as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c), engaged in, or the activities of which affect, interstate commerce.

97.   From in or about 06/22/2015, at least through April 2016, Defendant, BSI, conducted and participated in the affairs of Defendants' artifice through a pattern of racketeering activity, including the acts of mail fraud described herein.

## THE PATTERN OF RACKETEERING ACTIVITY

98.   The racketeering acts set forth herein were carried out over nearly one year, were related and similar, were committed as part of the Defendants' scheme to reverse the Declaratory judgment, get the Declaratory Action dismissed so that the Trust could acquire title to or interest in the Property, and to collect or intend to collect money from Plaintiffs.

99.   As part of the pattern of racketeering activity, and to execute the Defendants' artifice to defraud Plaintiffs, as described above, from the inception of the scheme, BSI collaborated fabricating its Affidavit, containing false statement(s) and representations in regards to material matter that Mr. Villegas could not believe to be true, to be used in official proceedings. Further, the Affidavit incorporated the B-Note.

100.  In furtherance of the scheme or artifice to defraud, and in multiple violations of 18 U.S.C. 1341, BSI started mailing its Statements through the US mail collecting or trying to collect money from Plaintiffs.

101.  Mail fraud constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1)(b).

102. Each Statement mailed constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

103. BSI's conduct constitutes a violation of 18 U.S.C. § 1962(c).

**DAMAGES SUSTAINED BY THE PLAINTIFF, ELIEZER TAVERAS**

104. As a direct and proximate cause of BSI's violation of 18 U.S.C. § 1962(c), the Plaintiff, Eliezer Taveras, has been injured in his business and property; the Plaintiff has been damaged in the aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

105. Under 18 U.S.C. § 1964(c), Eliezer Taveras is entitled to recover from Defendant, BSI, three-fold damages sustained by him, together with the costs of this lawsuit and reasonable attorneys' fees.

**COUNT III**
**COMMON LAW FRAUD**
**ALL PLAINTIFFS**
**AGAINST ALL DEFENDANTS**

106. Eliezer Taveras' have been injured personally and in his business as a direct consequence of Defendants' acts, which have also e resulted in a purported debt against Plaintiff, Valeria Taveras. The Plaintiffs have standing to bring this action.

107. On information and belief, Defendants intentionally, knowingly, misrepresented the Trust's legal capacity to enforce the Mortgage, using a false promissory note, an affidavit containing false statements and representations in regard to material matter that Mr. Villegas could not believe to be true, and documents filed in official proceedings containing false and misleading statements and omissions, as stated above.

108. Defendants made and presented material misrepresentations to Plaintiffs.

109. **The B-Note** contains false and misleading statements and information; while it purports to comply with Chapter 673 of Florida Statute, in order to represent the Trust's legal rights to enforce the mortgage, those representations are false.

110. **The CT-Motion** is fraudulent in that it contains false and misleading statements concerning the Trust's "legal rights" to enforce the Mortgage; further, it incorporated by reference the Affidavit, containing false statements and representations in regards to material matter that Mr. Villegas could not believe to be true.

111. **The Affidavit** is fraudulent in that it contains false and misleading statements concerning the Trust's "legal rights" to enforce the Mortgage; further, it contains false and misleading statements concerning the compliance with Chapter 673 of Florida Statutes. The Affidavit was executed to mislead the Plaintiffs and the State Court.

112. Neither BSI nor the Trust had legal rights to collect money or try to collect money from the Plaintiffs before the 5DCA reversed the Declaratory Judgment. **The Statements** were mailed in furtherance of the scheme to defraud the Plaintiffs.

113. The foregoing was intended to deceive and mislead the Plaintiffs into believing that the Trust had legal rights to enforce the Mortgage, inducing them to sign the Notice of Dismissal.

114. Defendants knew the foregoing material misrepresentation to be false when made; Defendants intended to induce the Plaintiffs to act in reliance on that representation.

115. The Plaintiffs did reasonably and justifiable acted in reliance on that representation and upon a state of facts, which plaintiffs were led to believe existed.

116. The Plaintiffs' reliance on the Defendants' representations was justifiable, the Defendants' scheme, including attaching a copy of the B-Note to the CT-Motion had an acceptable

level of materiality; the B-Note looks genuine and is capable of misleading the average person; Defendants' misrepresentations could not be discovered under the circumstances.

117. As a direct and proximate cause of Defendants' misrepresentations the Plaintiffs have been and are continuing to be injured, personally, and in their business or property, in the form of distress, mental anguish, in the form of cloud on title to Property, and purported debt, in the aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

118. Defendants' misrepresentation was a substantial factor causing the harm.

119. Had Plaintiffs known that the Defendants were misrepresenting the Trust's rights to enforce the Mortgage, they had not signed the Notice of Dismissal.

120. The Plaintiffs were deprived of a fair trial.

**COUNT IV**
**CIVIL REMEDIES FOR CRIMINAL PRACTICE**
**F.S. CHAPTER § 772.11**
**ALL PLAINTIFFS**
**AGAINST ALL DEFENDANTS**

121. The Plaintiffs bring this action against all Defendants, pursuant to Florida Civil Remedies for Criminal Practice, s. 772.104.

122. Section § 772.104 of Florida Statutes provides a cause of action for threefold damages sustained for **any person** that has been injured by reason of any violation of the provisions of s. 772.103.

**THE ENTERPRISE**

123. The BCB Enterprise is an **enterprise** within the meaning of s. 772.102(3).

124. As a whole, Defendants, BSI, the Trust, and BANA, acted jointly, with very well-defined ongoing roles in the organization.

125.  Defendant, the Trust, at all relevant times, was the principal of, exerted control over and directed the operations of the BCB Enterprise and each of its component parts. The Trust utilized that control to reverse the Declaratory Judgment, to acquire title to or interest in the Property, and to collect or attempt to collect money from the Plaintiffs.

126.  Defendants BANA and BSI were employed by or associated with the BCB Enterprise and its component parts, and participated in the conduct of its affairs through a pattern of **criminal activity**, as that term is defined in s. § 772.102(1), including violating or conspiring to violate: F.S. § 837.02, F.S., F.S. § 831.07, and 18 U.S. Code 1341.

127.  The Defendants engaged in a "Pattern of criminal activity" as that term is defined in s. 772.102(4).

128.  The Defendants engaged in at least two incidents of criminal activity that had the "similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics."

### THE PATTERN OF CRIMINAL ACTIVITY

129.  The **criminal activity** set forth herein was carried out over nearly a three-year period, the acts were related and similar, were committed as part of the Defendants' scheme to reverse the Declaratory Judgment, to collect or intend to collect money from Plaintiffs.

130.  As part of the pattern of criminal activity, and to execute the Defendants' artifice to defraud Plaintiffs, as described above, Defendant, BANA, forged a promissory note, in violation of F.S. § 831.07;

131.  BSI produced or caused to be produced the Affidavit, containing false statements and representations in regards to material matter that Mr. Villegas could not believe to be true, to be used in the State Court's proceeding, in violation of F.S. § 837.02; and then started

to collect, or trying to collect, on behalf of the Trust, over $400,000.00 using the U.S. mail, in violation of 18 U.S. Code 1341.

## DAMAGES SUSTAINED BY THE PLAINTIFFS

119. As a direct and proximate cause of Defendants' overt acts and predicate acts in furtherance of violations of the provision of s. 772.103 the Plaintiffs have been and are continuing to be injured in the form of mental anguish, distress, business, and personal losses in aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

132. Under s. 772.104(1), the Plaintiffs are entitled to recover from Defendants, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## COUNT V
### CIVIL REMEDIES FOR CRIMINAL PRACTICE
### F.S. CHAPTER § 772.11
### ALL PLAINTIFFS
### AGAINST BSI AND THE TRUST

133. The Plaintiffs bring this action against BSI and the Trust, pursuant to s. 772.104 of F.S., which provides a cause of action for threefold damages sustained for any person that has been injured by reason of any violation of the provisions of s. 772.103.

## THE ENTERPRISE

134. At all times relevant herein, the individual defendants BSI and the Trust were "enterprise" as that term is defined by s. 772.102(3).

## THE PATTERN OF CRIMINAL ACTIVITY

135. The **criminal activity** set forth herein was carried out over nearly one year, the acts were related and similar, were committed as part of the Defendants' scheme to reverse the

Declaratory Judgment, to collect or intend to collect money from Plaintiffs.

136. As part of the pattern of criminal activity, and to execute the Defendants' artifice to defraud Plaintiffs, BSI produced or caused to be produced the Affidavit, containing false statement(s) and representations in regards to material matter that Mr. Villegas could not believe to be true to be used in the State Court' proceedings, in violation of F.S. § 837.02.

137. Further, in violation of 18 U.S.C. § 1341 BSI started collecting or trying to collect money from Plaintiffs, even while the Declaratory Judgment was still in effect.

138. In violation of s. 772.103, BSI and the Trust, acting in concert with each other, violated or conspired to violate F.S. § 837.02, and 18 U.S.C. § 1341, so that these corporations could enrich themselves, **acquiring title to, or interest in the Property**.

**DAMAGES SUSTAINED BY THE PLAINTIFFS**

119. As a direct and proximate cause of The Trust and BSI overt acts and predicate acts in furtherance of violations of the provision of s. 772.103 the Plaintiffs have been and are continuing to be injured in the form of mental anguish, distress, business, and personal losses, and a purported debt, in aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

139. Under s. 772.104(1), the Plaintiffs are entitled to recover from the Trust and BSI, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**COUNT VI**
**CIVIL REMEDIES FOR CRIMINAL PRACTICE**
**F.S. CHAPTER § 772.11**
**AGAINST BANA AND THE TRUST**

140. The Plaintiffs bring this action against BANA, and the Trust pursuant to s. 772.104 of F.S.,

22

which provides a cause of action for threefold damages sustained for any person that has been injured by reason of any violation of the provisions of s. 772.103

## THE ENTERPRISE

141. At all times relevant herein, BANA and the Trust were individually an "enterprise" as that term is defined by s. 772.102(3).

## THE PATTERN OF CRIMINAL ACTIVITY

142. The **criminal activity** set forth herein was carried out over nearly a three-year period, the acts were related and similar, were committed in furtherance of the Defendants' scheme to reverse the Declaratory Judgment, to collect or intend to collect money from Plaintiffs, and the executed scape strategy defrauding a financial institution but leaving a cloud on title to the Property and a purported debt against Valeria Taveras.

143. Defendants, BANA and the Trust acting singly and in concert with each other violated or conspired to violate F.S. § 831.07 and F.S. § 831.02.

144. As part of the pattern of criminal activity, from in or about 06/22/2015, through 04/20/2018, and to execute the Defendants' artifice to defraud Plaintiffs, so that the Trust could acquire the purported right or interest in the Property so that these corporations could enrich themselves, Defendant, BANA, fabricated the forged promissory note, in violation of F.S. § 831.07.

145. The misrepresentations of the document's compliance with Chapter 673 of F.S., including the blank indorsement, executed by the BANA's employee, was done in furtherance of the Defendants' scheme to utter the forged promissory note - executed by the Trust - in violation of F.S. § 831.02.

146. In violation of s. 772.103, BANA and the Trust violated, attempted to violate, or conspired

to violate F.S. § 831.07, and F.S. § 831.02.

## DAMAGES SUSTAINED BY THE PLAINTIFFS

119. As a direct and proximate cause of BANA, and the Trust overt acts and predicate acts in furtherance of violations of the provision of s. 772.103 the Plaintiffs have been and are continuing to be injured in the form of mental anguish, distress, business, and personal losses, a purported debt, in aggregate amount presently in excess of $1,000,000.00, the exact amount to be determined at trial.

147. Under s. 772.104(1), the Plaintiffs are entitled to recover from Defendants, BANA and the Trust, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## COUNT VII
### F.S. § 817.535
### ALL PLAINTIFFS AGAINST THE TRUST

148. The Plaintiffs bring this action against the Trust, pursuant to Section § 817.535(8)(a) of Florida Statutes.

149. Section § 817.535(8)(a) of Florida Statutes provides a cause of action for damages sustained for any person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation.

150. The CT-Corrective is in violation of F.S. § 817.535, in that it contains false, and fraudulent statements and representations related to the "compliance" of Chapter 673 and 674 of F.S.

151. The Trust intended to defraud or harass the Plaintiffs.

152. As a direct and proximate cause of the Trust's act the Plaintiffs have been and are continuing to be injured in the form of a cloud on title to the Property, and a purported debt against Valeria Taveras, in aggregate amount presently in excess of $1,000,000.00, the

exact amount to be determined at trial.

153. Under s. § 817.535(8)(b)(2)§(3) the Plaintiffs are entitled to recover from the Trust, actual and punitive damages subject to the criteria in s. 768.72, and such other relief or remedy that the court determines is just and proper within its sound judicial discretion, together with the costs of this lawsuit and reasonable attorneys' fees.

## COUNT VIII
## DECLARATORY JUDGMENT
## 28 U.S. CODE §§ 2201, 2202
## ALL PLAINTIFFS AGAINST BANA AND THE TRUST

154. The Plaintiffs bring this action against BANA, and the Trust, seeking declaratory judgment, pursuant to 28 U.S.C. §§ 2201 (Creation of Remedy), and 2202 (Further Relief).

155. The B-Note references the Property and is a purported debt against Valeria Taveras. The Plaintiffs have standing to bring this action.

156. Under 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

157. The B-Note references the Property and is a purported debt against Valeria Taveras. The Plaintiffs have standing to bring this action.

158. An actual controversy that is ripe for judicial determination has arisen and now exists regarding whether Plaintiff, Valeria Taveras, is liable for the B-Note, or if BANA must be held liable for it.

159. An actual controversy that is ripe for judicial determination has arisen and now exists regarding whether the B-Note legally encumbers the Property.

160. The Defendants' deceptive scheme to get the Declaratory Judgment reversed and the Declaratory Action dismissed warrants the grant of declaratory judgment, declaring that

Plaintiffs are under no obligation to pay any amount in relation to the B-Note.

161. Plaintiff, Valeria Taveras, did not sign the B-Note, nor authorized any person to sign it on her behalf.

162. On information and belief, Mrs. Taveras' signature was forged by a BANA's employee, acting within the course and scope of his employment or contractual relationship with BANA and then presented to the State Court by the Trust as genuine.

163. Under Florida's law a person is not liable for an instrument unless the person signed or authorized another person to sign the instrument on his behalf.[6]

164. Under Florida's law an unauthorized signature is ineffective.[7]

165. Under Florida's law impostors are liable for forged instruments.[8]

166. The B-Note constitute a cloud on title to the Property and a purported debt against Valeria Taveras. Under Florida law, the actual or future "holder in due course" of the false promissory note might claim an interest in the Property, thus the B-Note constitutes a risk of irreparable injury to Plaintiff(s).

167. Plaintiffs are entitled, as a matter of law, to a judgment declaring that the Plaintiff, Valeria Taveras, never was and is not liable for the B-Note and that Defendant, BANA, is *ab initio*.

168. Plaintiffs are entitled, as a matter of law, to a judgment declaring and that Defendant, the Trust, as a BANA's assignee, and any other person claiming to be in possession of the B-Note or "holder in due course", including BSI, never had, and do not now have, standing to prosecute any claim against the Plaintiffs, in any arbitration proceeding or lawsuit commenced in any court, and that the Plaintiffs are under no obligation to pay any money

_____

[6] UCC 673.4011(a).
[7] UCC 673.4031.
[8] UCC 673.4041.

in connection to the B-Note.

169. Further, there is a need for a declaratory judgment for disgorgement of ill-gotten monies, to prevent and remedy fraud related to the B-Note.

## COUNT IX
## INJUNCTIVE RELIEF
## 28 U.S. CODE §§ 2201, 2202
## ALL PLAINTIFFS AGAINST ALL DEFENDANTS

170. The Plaintiffs bring this action against all Defendants, seeking injunctive relief, pursuant to 28 U.S.C. §§ 2201 (Creation of Remedy), and 2202 (Further Relief).

171. The B-Note references the Property and is a purported debt against Valeria Taveras. The Plaintiffs have standing to bring this action.

172. In furtherance of the Defendants' scheme, (a) BANA manufactured the B-Note, containing material misrepresentations, (b) BSI produced the Affidavit, containing false statement(s) and representations in regards to material matter that Mr. Villegas could not believe to be true, and (c) the Trust file the CT-Motion to get or try to get the Declaratory Judgment reversed and the Declaratory Action dismissed, incorporating by reference, both, the Affidavit and the B-Note, and making false statements and representation in relation to the Trust' purported legal interest in the Mortgage.

173. At the time the foregoing material misrepresentations were made by Defendants, they were known by the Defendants to be false. Defendants nevertheless used the false promissory note with the intent to deceive and to defraud Plaintiffs and to induce Plaintiffs either to pay over $400,000.00 or to induce them to dismiss the Declaratory Action, which Plaintiffs did in fact executed in reliance thereon due to the circumstances, and which Plaintiffs would not otherwise do at all, had Plaintiffs known the true facts.

174. Defendants, acting singly and in concert with each other, defrauded the Plaintiffs, who are on the risk of irreparable harm for which there exists no adequate remedy at law.

175. Injunctive relief is necessary and appropriate in this case because Defendants' misrepresentation has resulted in a cloud on title to the Property and a cloud of uncertainty over Plaintiffs' investment activities, and a purported debt against Valeria Taveras.

176. Defendants' conduct warrants the grant of a permanent injunction against them, precluding any intent to collect money from Plaintiffs and their initiation against Plaintiffs of any legal proceedings, including but not limited to arbitration, lawsuits, in any forum or jurisdiction seeking payment for or equitable relief in connection to the B-Note

177. A balancing of the equities favors granting injunctive relief. Denial of the relief south will cause far greater harm to the Plaintiffs than the granting of the relief will cause Defendants.

178. Granting the injunctive relief sought will serve the imperative of denying Defendants further opportunities to unjustly enrich themselves through the ill-gotten proceeds of illegal activity, in the sale or transfer of the B-Note, or further similar conduct.

179. Both, **BANA** and the **Trustee** are national banks, their conduct affects millions of people. The public interest of protection from Banks' fraudulent conduct is guaranteed by both, federal and Florida law. Therefore, under such egregious conduct by these national banks, granting the relief south will foster and protect the public interest.

180. There is a substantial likelihood that Plaintiffs will succeed on the merits of the claims for the reliefs sought herein.

181. There is a need for preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of injury during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary

injunctions.

**WHEREFORE,** Plaintiff(s) request relief as follows:

1.  Compensatory damages in an amount in excess of $1,000,000.00, the exact amount to be determined at trial;

2.  Treble damages, costs, and reasonable attorney's fees pursuant to the FIRST and SECOND claims;

3.  Compensatory damages, costs, and reasonable attorney's fees pursuant the THIRD claim(s);

4.  Treble damages, costs, and reasonable attorney's fees pursuant the FOURTH through SIXTH claim(s);

5.  Compensatory damages and punitive damages, as this Court might found necessary and appropriate, costs, and reasonable attorney's fees pursuant the SEVENTH claim(s);

6.  Declaratory relief pursuant the EIGHTH claim(s), declaring:

    a.  That the Plaintiff, Valeria Taveras, never was and is not liable for the B-Note;

    b.  That Defendant, Bank of America, N.A. is liable for the B-Note *ab initio*;

    c.  That the B-Note does not encumber the Property;

    d.  That Defendant, the Trust, as an assignee of BANA, and any other person claiming to be the "holder in due course" of the B-Note, never had, and do not now have, standing to prosecute any claim against the Plaintiffs, their heirs, or successors in interest, in connection to the B-Note, in any arbitration proceeding or lawsuit commenced in state or federal court;

    e.  That the Plaintiffs are under no obligation to pay any money to BANA, the Trust, and any other person claiming to be the "holder in due course" of the B-

Note;

    **f.**  Disgorgement of ill-gotten monies, to prevent and remedy fraud in relation to the B-Note.

7. Injunctive relief pursuant the NINTH claim(s), enjoining and restraining Defendants, BANA, the Trust and BSI, and their respective directors, employees, heirs, agents, successors in interest, assignees, representatives, and those persons in active concert or participation with them, from:

    **a.**  Submitting to Plaintiffs, their heirs, and successors in interest, any bills or mortgage statements seeking payment in connection to the B-Note;

    **b.**  Initiating or pursuing against Plaintiffs, their heirs, and successors in interest, any legal proceedings, including but not limited to lawsuits, mortgage foreclosures, in any forum or jurisdiction seeking payment for or equitable relief regarding any alleged right in connection to the B-Note.

8. Preliminary, injunctive, and ancillary relief pursuant the NINTH claim(s), as might be necessary to avert the likelihood of injury during the pendency of this action and to preserve the possibility of effective final relief; including, but not limited to, temporary and preliminary injunctions.

## JURY DEMAND

Pursuant to Rule 38 of Federal Rule of Civil Procedure Plaintiffs hereby request a trial by jury on all issues triable by jury.

Under penalties of perjury, I declare that I have read the foregoing document and
that the facts stated in it are true, to the best of my knowledge and belief.

Eliezer Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
Etaveras2020@gmail.com

Respectfully submitted on September 7th, 2020,

Valeria Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
valtaveras@yahoo.com

Eliezer Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
Etaveras2020@gmail.com

## CERTIFICATE OF CERVICE

I HEREBY CERTIFY that on this 7th day of September, 2020, I electronically caused the foregoing document to be filed with the Clerk of Court using the provided link at https://apps.flmd.uscourts.gov/cmecf/filings.cfm, which will guarantee service to all counsels of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF, and via Electronic Mail, to JRLII@lgplaw.com; MAM@lgplaw.com; jason.silver@gmlaw.com; gmforeclosure@gmlaw.com.

Elezer Taveras
7706 Excitement Dr
Kissimmee, FL 34747
305-515-4840
Etaveras2020@gmail.com